## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JACOB LUKE, SR.                                              CIVIL ACTION

VERSUS                                                        NO. 16-13461

CAPT. BEAGRON, ET AL.                                 SECTION: "R"(1)

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Jacob Luke, Sr., a state pretrial detainee, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Captain S. Bergeron,[1] Sheriff Jerry Larpenter,[2] Lieutenant Nichallis Daigle,[3] Warden Trish, the Narcotics Team,[4] and Officer Scott. He thereafter amended the complaint on numerous occasions, and he added Cory Daplantis, Lieutenant T. Schwausch, and District Attorney Amanda Mustin as additional defendants.

In this lawsuit, plaintiff asserts various claims arising from a jail shakedown. To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on November 17, 2016. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

---

[1] Bergeron was incorrectly identified in the complaint as "Capt. Beagron."
[2] Larpenter was incorrectly identified in the complaint as "Sheriff Jerry Laphaner."
[3] Daigle was identified in the original complaint as "Lt. Nick."
[4] In the complaint, plaintiff referred to this defendant as the "Noraratics Team."

Based on plaintiff's complaint, as amended, and <u>Spears</u> hearing testimony, the Court finds that he is making the following allegations in this lawsuit:

On May 3, 2016, at approximately 9:00 p.m., Lieutenant Bergeron and narcotics officers conducted a shakedown at the Terrebonne Parish Jail. The officers had guns and were accompanied by dogs. Brandishing a gun, Officer Scott approached plaintiff, who was lying on his stomach on his mattress on the floor. When plaintiff raised his head, Scott told him to stay down and stepped on his shoulder. From a standing position, Scott then dropped his knee onto plaintiff's back with such force that it caused something in his shoulders to "crack." Scott also forced plaintiff's arm to his back and restrained him with handcuffs and leg restraints. Plaintiff noted that all of the inmates were restrained on this occasion, taken outside, and left there with mosquitoes biting them.

Approximately one hour later, Lieutenant Nichallis Daigle brought the inmates back inside. At that time, the jail dorm was in disarray, with items scattered everywhere. Plaintiff noticed that his mattress was missing, as were some of his personal items (specifically, t-shirts, socks, and a pair of boxer shorts). He was provided with a new mattress later that night, but his missing clothing was not returned. However, he conceded that he did not know whether the clothing had in fact been taken by officers during the shakedown or was instead simply stolen by other inmates from the mess left behind. Plaintiff also complained that inmates were not given supplies to clean up the mess in the dorm until the following day.

Plaintiff filed an administrative grievance complaining about the shakedown. On May 11, 2016, Lt. T. Schwausch responded to the grievance, stating:

This is response to A.R.P. received May 5, 2016.

2

The action of May 3, 2016 in dorm C300 was approved by the T.P.S.O. administration and carried out within the scope and training of the officers involved. All action, tactics, equipment, and personnel were approved and appropriate for the task. It was under the direction of CAPT. S BERGERON who was present during the entire operation. I have spoken with officers involved, Capt Bergeron, viewed video of the operation and was present for the operation in its entirety. At no point I find the use of force, tactics or any action that constituted unnecessary or placed anyone's safety in jeopardy by the officers involved. However, I have determined that you refused to follow the officers instructions. Assaulted a police k-9, and physically resisted officers during the performance of their duties. These actions by you have resulted in additional criminal charges being filed.

In addition to the complaint of safety you make mention of being locked down following the shakedown. Specifically not having mattresses or blankets. I viewed the video from start to finish in C300. No mattresses or blankets were taken from the dorm. Three mattress covers with no stuffing and ripped were removed but nothing else. Therefore, if you had a mattress and blanket prior to the dorm shakedown then it remained and was present when you returned. The only items taken were not authorized for retention by the inmates.

You have requested as relief desired "shipped from this facility". As I outlined in previous A.R.P.'s you are awaiting trial. You cannot be shipped to a D.O.C. facility unless your legal status changes. If convicted you can make this request then, and housing you in another awaiting trial facility is not currently being considered. You will need to contact your lawyer about obtaining a recog bond.[5]

At the <u>Spears</u> hearing, plaintiff explained the incident involving the police dog. He states that his slipper came off, causing him to stumble as he walked past Officer Cory Daplantis and the dog. That caused the dog to bark, and the officers interpreted the incident as an attempt by plaintiff to provoke the animal. Officers Scott and Daplantis told plaintiff they would allow the dog to bite him if he did that again. Scott then grabbed plaintiff by the arm and tried to hurry him along. That action hurt plaintiff's arm, causing him to pull away.

Regarding the criminal charges referenced in Schwausch's response, plaintiff states that he was criminally charged with interfering with law enforcement and two counts of simple assault arising from this incident. Plaintiff stated that the charges were misdemeanors, and, despite the

---

[5] Rec. Doc. 11, p. 6.

fact that he was innocent, he nevertheless pleaded "no contest" to the charges in order to resolve the matter.

Plaintiff also noted that he did not initially believe he was physically injured by Officer Scott's actions. However, he later began to experience symptoms such as neck pain and numbness in his arms and hands, and he still experiences those symptoms periodically. He requested medical care, and a doctor diagnosed plaintiff as having a pinched nerve and prescribed Flexeril (a muscle relaxer) and ibuprofen. Plaintiff feels that additional medical care and examinations should have been provided, such as x-rays or an MRI.

Although plaintiff pleaded "no contest" to the charges arising from the shakedown, his original criminal charges for theft and attempted armed robbery currently remain pending. Plaintiff complains that after he filed this federal lawsuit, District Attorney Amanda Mustin allegedly persuaded a private attorney, Barron Whipple, not to represent plaintiff in the criminal case. Attorney Robert Pastor was then retained, and he is representing plaintiff in state court on the remaining criminal charges.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[6]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

---

[6] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)     is frivolous or malicious;
>
> (ii)    fails to state a claim on which relief may be granted; or
>
> (iii)   seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[7] and fully considering his Spears hearing testimony, the undersigned recommends that the majority of plaintiff's claims be dismissed as frivolous and/or for failing to state a claim on which relief may be granted for the following reasons.

## II.  Claims Which Should be Dismissed

### A.  The "Narcotics Team"

As an initial matter, the Court notes that plaintiff has named the "Narcotics Team" as a defendant for its role in the shakedown on May 3, 2016.  That is improper.  The "Narcotics Team" is not a juridical entity capable of being sued; rather, only the team members themselves may be sued, and even then only if they are properly identified.  See Hill v. Strain, Civ. Action No. 08-4768, 2010 WL 111062, at *3 (E.D. La. Jan. 11, 2010) ("A § 1983 action must be filed against an actual identified person.  Therefore, plaintiff's claims against the unidentified defendants should be dismissed as frivolous and for otherwise failing to state a claim upon which relief can be

---

[7] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

granted."); <u>Francis v. Terrebonne Parish Sheriff's Office</u>, Civ. Action No. 08-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009); <u>Staritz v. Valdez</u>, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); <u>Banks v. United States</u>, Civ. Action No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007).  However, in the instant case, it is unnecessary to afford plaintiff yet another opportunity to amend the complaint to properly identify the team members who participated in the shakedown, because, as explained below, the shakedown simply did not violate plaintiff's rights.

## B.  The Shakedown

It appears that plaintiff is alleging that prison officials had no right to conduct the shakedown.  If so, he is incorrect.  The United States Supreme Court has stated:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. ...
>
> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors.  They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves.  They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.  In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.

> The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S., at 566, 94 S.Ct., at 2979; Hewitt v. Helms, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.
>
> ... A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S., at 537, 99 S.Ct., at 1873.

Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) (footnote omitted). Therefore, the Constitution does not protect plaintiff against searches of his living area at the jail, and jail officials did not violate plaintiff's constitutional rights by authorizing and participating in such searches.

To the extent that plaintiff is also claiming his rights were violated by the fact that the officers were armed with guns and accompanied by police dogs during the shakedown, that contention is likewise meritless. There is no constitutional prohibition against jail guards carrying firearms or utilizing dogs to conduct searches. See Claborn v. Tanner, Civ. Action No. 12-0319, 2013 WL 6072710, at *3 (E.D. La. Nov. 18, 2013) (prison guard's brandishing of a gun, by itself, "is insufficient to support a claim of excessive force or violation of any constitutional right"); Rollins v. Barnes, Civ. Action No. 1:08cv190, 2010 WL 376822, at *4 (S.D. Miss. Jan. 20, 2010) ("The use of dogs to assist in controlling the situation during shakedowns and searches for contraband appears to be reasonably related to legitimate governmental objectives in maintaining the security of the facility."). Further, the United States Supreme Court has noted: "[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."

Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981).  Where, as here, the specific actions at issue are not inherently unconstitutional, there is simply no basis for the Court to second-guess the defendants' exercise of their discretion.  Accordingly, this claim should be dismissed.

### C.  Conditions Outdoors

Plaintiff next complains about the conditions he endured during the one hour he was forced to remain outside while the shakedown occurred.  However, the only specific condition about which he complains is the fact that mosquitoes were present and biting him.  The Court does not doubt that mosquitoes were present outdoors on a May night in Louisiana – or that the resulting mosquito bites were annoying and uncomfortable.  However, that was a temporary situation, and plaintiff experienced no lasting harm from the bites.  Without more, his brief exposure to biting insects while outdoors is insufficient to support a constitutional claim.  See Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999) (inmate was left outdoors overnight without protective clothing; however, the fact that he "may have endured irritating insect bites without immediate medical attention does not rise to the level of a cognizable constitutional injury.").

### D.  Conditions Indoors After the Shakedown

Plaintiff further complains about the state of the dorm after the shakedown, alleging that it was left in disarray and was unsanitary due to the presence of the dogs.  That claim also fails.

Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not

9

require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Moreover, "the length of time spent in the offensive conditions should be taken into account." Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003). For example, the United States Supreme Court has noted "that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell … might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

Here, the conditions were quickly remedied, in that plaintiff concedes that inmates were given cleaning supplies the following day. Considering the *de minimis* nature of the conditions alleged and their brief duration, the Court simply cannot say that the conditions described by plaintiff rose to the level of a constitutional violation.

### E. Missing Items

Plaintiff next claims that various items went missing during or after the search. However, for the following reasons, that claim likewise fails.

For example, although plaintiff's mattress was taken, he concedes that he was provided a new mattress a few hours later. That dooms his claim, because a deprivation of a mattress for a limited period of time is not unconstitutional. See, e.g., Stephens v. Cottey, 145 Fed. App'x 179 (7th Cir. 2005); Grissom v. Davis, 55 Fed. App'x 756 (6th Cir. 2003); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996); Davis v. Gusman, Civ. Action No. 09-7195, 2010

WL 1727825, at *22-23 (E.D. La. Apr. 13, 2010), <u>adopted</u>, 2010 WL 1727821 (E.D. La. Apr. 28, 2010); <u>Magee v. Crowe</u>, Civ. Action No. 09-3142, 2010 WL 630011, at *9-10 (E.D. La. Feb. 19, 2010); <u>McAllister v. Strain</u>, Civ. Action No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009); <u>Desroche v. Strain</u>, 507 F. Supp. 2d 571, 579-81 (E.D. La. 2007).

In his complaint, plaintiff also alleges that some blankets were taken. However, even if the Court assumes that plaintiff was among the inmates whose blankets were taken, a temporary deprivation of a blanket is not sufficiently egregious to violate the Constitution. <u>Maddox v. Gusman</u>, Civ. Action No. 14-2435, 2015 WL 1274081, at *5 (E.D. La. Mar. 19, 2015); <u>Carter v. Strain</u>, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); <u>McAllister</u>, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009). Further, it must be remembered that this incident occurred in May, so there is no reason to believe that blankets were necessary to protect plaintiff from extreme cold.

Lastly, as to plaintiff's allegation that some of his items of clothing were taken, he admitted that those items might have been taken by other inmates. However, even if the items were misplaced or stolen by an unknown officer, that would not rise to the level of a constitutional violation. In <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no constitutional violation *if* the state provides an adequate postdeprivation remedy. In <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property. In <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled <u>Parratt</u> in part, holding that merely negligent deprivations of property simply do not implicate constitutional protections *at all*.

11

Therefore, it is of no consequence whether plaintiff is alleging his clothing went missing through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If he is claiming negligence on the part of a guard, the claim is barred by Daniels. On the other hand, if he is claiming that a guard intentionally stole the clothing, the claim is barred by Hudson because Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); see also Bennett v. Louisiana Department of Public Safety and Corrections, No. 02-30593, 2003 WL 1109690 (5th Cir. Feb. 19, 2003); Odom v. St. Tammany Parish S.O., Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009).

### F.  Medical Care

Plaintiff also complains that he has not received adequate medical care for the injury he sustained from Officer Scott's use of force during the shakedown. As an initial matter, the Court notes that plaintiff has not named a proper defendant with respect this claim, in that he has failed to identify the individual who allegedly denied him appropriate care. Nevertheless, again, it is unnecessary to give him an opportunity to amend the complaint to identify that individual because, for the following reasons, it is evident that his claim is frivolous in any event.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

12

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  Here, plaintiff's injury was diagnosed as a pinched nerve, and it is unclear whether a pinched nerve would qualify as a serious medical need for the purposes of constitutional law. Compare Purkey v. Green, 28 Fed. App'x 736, 743-44 (10th Cir. 2001) (pinched nerve neck injury was a serious medical need), and Lodholz v. Wisconsin Department of Corrections, No. 03-C-350, 2003 WL 23218367, at *3 (W.D. Wis. July 16, 2003) (pinched nerve that caused "agonizing pain" was a serious medical need), with Bennett v. Hunter, No. 9:02-CV-1365, 2006 WL 1174309, at *3 (N.D.N.Y. May 1, 2006) (pinched nerve in wrist was not a serious medical need).

Nevertheless, *even if* plaintiff's injury could be considered a "serious medical need," his claim would still fail because he cannot show that prison officials acted with "deliberate indifference."  As the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. … [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  … And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, plaintiff merely disagrees with the physician's opinion as to appropriate treatment and testing necessary for accurate diagnosis. However, absent exceptional circumstances, a disagreement concerning treatment does not constitute deliberate indifference. Gobert, 463 F.3d at 346; see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference). Moreover, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). This is true even if, as here, the inmate believes that he may have been misdiagnosed, because "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." Domino, 239 F.3d at 756. In summary, there is no basis whatsoever to engage in such second-guessing in the instant case.

The foregoing conclusion is not changed by the fact that plaintiff's injury has not been cured. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted

despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need that was met with deliberate indifference.  He did not.  Accordingly, his claim that he was denied adequate medical care is legally frivolous and should therefore be dismissed.

### G.  Lieutenant Schwausch

Plaintiff next claims that his grievance was not adequately remedied by Lieutenant Schwausch.  However, that claim necessarily fails because inmates have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction.  Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

It also appears that plaintiff may be claiming that, after Schwausch reviewed the video of the shakedown, he had plaintiff falsely arrested for the three misdemeanor criminal charges.  If so, that claim is not actionable at this time.  Although plaintiff states that he was innocent, he pleaded "no contest" to those charges.  By virtue of his pleas, he stands convicted of the charges.  As a result, he is currently barred from claiming that the charges were invalid in a civil action brought pursuant to 42 U.S.C. § 1983.

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §

1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original) (footnote omitted). Courts have therefore held that Heck bars a false arrest claim brought by a convicted prisoner until such time as he obtains a favorable disposition of the criminal charges. See Wallace v. Kato, 549 U.S. 384, 394 (2007); Queen v. Purser, 109 Fed. App'x 659, 660 (5th Cir. 2004); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995); Jordan v. Strain, Civ. Action No. 09-3565, 2009 WL 2900013, at *2 n.4 (E.D. La. Aug. 28, 2009); Landor v. Hogue, Civ. Action No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008). Accordingly, plaintiff's claim that he was falsely arrested on the three misdemeanors must be dismissed with prejudice to its being asserted again until the Heck conditions are met.[8]

### III.  Remaining Claims

### A.  Excessive Force Claim Against Scott

Plaintiff claims that Officer Scott used excessive force during the shakedown. While expressing no opinion as to the ultimate merit of the claim, the undersigned finds that, for the following reasons, that claim is not patently frivolous and therefore should survive the preliminary screening process.

Plaintiff was a pretrial detainee at the time of the incident. His excessive force claim therefore "lies under the Fourteenth Amendment." Benoit v. Bordelon, 596 Fed. App'x 264, 267 n.2 (5th Cir. 2015). In this Circuit, it has long been the rule that excessive force claims brought

---

[8] See DeLeon v. City of Corpus Christi, 488 F.3d 649, 657 (5th Cir. 2007) ("A preferred order of dismissal in Heck cases decrees, 'Plaintiffs claims are dismissed with prejudice to their being asserted again until the Heck conditions are met.'").

pursuant to the Fourteenth Amendment by pretrial detainees are to be considered using the same

analysis as employed when considering excessive force claims brought pursuant to the Eighth

Amendment by convicted prisoners.  Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir. 1993).

The United States Fifth Circuit Court of Appeals reasoned:

> [I]t is impractical to draw a line between convicted prisoners and pretrial detainees
> for the purpose of maintaining jail security. …
> Therefore, when a court is called upon to examine the amount of force used
> on a pretrial detainees [sic] for the purpose of institutional security, the appropriate
> analysis is that announced in Whitley [v. Albers, 475 U.S. 312 (1986)] and Hudson
> [v. McMillian, 503 U.S. 1 (1992)]:   whether the measure taken inflicted
> unnecessary and wanton pain and suffering depends on whether force was applied
> in a good faith effort to maintain or restore discipline, or maliciously and
> sadistically for the very purpose of causing harm.

Valencia, 981 F.2d at 1446 (footnotes and internal quotation marks omitted); accord Kitchen v.

Dallas County, Texas, 759 F.3d 468, 477 (5th Cir. 2014).  As part of that analysis, courts were to

consider the following factors:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992) (citing Hudson v. McMillian, 503 U.S.

1, 7 (1992)).

However, the United States Supreme Court recently clarified the law concerning excessive

force claims brought pursuant to the Fourteenth Amendment.  The Supreme Court concluded that

with respect to a Fourteenth Amendment excessive force claim, a pretrial detainee need show only

that the use of force was "*objectively* unreasonable." <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466,

2470 (2015). In doing so, the Supreme Court expressly rejected a *subjective* standard, explaining:

> Respondents believe that the relevant legal standard should be subjective, *i.e.*, that the plaintiff must prove that the use of force was not "applied in a good-faith effort to maintain or restore discipline" but, rather, was applied "maliciously and sadistically to cause harm." Brief for Respondents 27. And they refer to several cases that they believe support their position. See *id.*, at 26-31 (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); [<u>County of Sacramento v.</u>] Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 [1997]; <u>Johnson v. Glick</u>, 481 F.2d 1028 (C.A.2 1973)).
>
> The first two of these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. <u>Whitley</u>, *supra*, at 320, 106 S.Ct. 1078; <u>Hudson</u>, *supra*, at 6-7, 112 S.Ct. 995. The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less "maliciously and sadistically." <u>Ingraham v. Wright</u>, 430 U.S. 651, 671-672, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); <u>Graham [v. Connor</u>, 490 U.S. 386], 395, n. 10, 109 S.Ct. 1865 (1989); see also 4 W. Blackstone, Commentaries *300 ("[I]f the offence be not bailable, or the party cannot find bail, he is to be committed to the county [jail] ... [b]ut ... only for safe custody, and not for punishment"). Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional. *<u>Whitley</u> and <u>Hudson</u> are relevant here only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails.*

<u>Kingsley</u>, 135 S. Ct. at 2475 (emphasis added).[9]

---

[9] The Court observed:

> We acknowledge that our view that an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment may raise questions about the use of a subjective standard in the context of excessive force claims brought by convicted prisoners. We are not confronted with such a claim, however, so we need not address that issue today.

<u>Kingsley</u>, 135 S. Ct. at 2476.

The United States Fifth Circuit Court of Appeals has not yet considered the ultimate impact of <u>Kingsley</u> on this Circuit's precedents.  However, Judge Debra M. Brown of the United States District Court for the Northern District of Mississippi concluded:

> In the approximately three weeks since <u>Kingsley</u> was decided, only one court in this circuit has addressed the Supreme Court's <u>Kingsley</u> opinion's impact on a Fourteenth Amendment excessive force claim in the Fifth Circuit.  In <u>Clark v. Anderson</u>, a Texas District Court followed the Fifth Circuit rule that Fourteenth and Eighth Amendment claims are analyzed under the same framework, although it allowed that "this holding is called into question by the Supreme Court's recent decision in <u>Kingsley</u> ...." No. 4:15-cv-360, 2015 WL 3960886, at *3, *3 n. 3 (N.D. Tex. June 29, 2015).  While <u>Clark</u> stopped short of recognizing that <u>Kingsley</u> overruled the <u>Kitchen</u> and <u>Valencia</u> line of cases, a reading of <u>Kingsley</u> compels such a conclusion.
>     <u>Kingsley</u> held that Fourteenth Amendment claims, unlike Eighth Amendment claims, must be decided under an objective standard.  135 S.Ct. at 2473-74.  <u>Kitchen</u> and <u>Valencia</u> held that Fourteenth Amendment claims, like Eighth Amendment claims, must be decided under a subjective standard.  <u>Kitchen</u>, 759 F.3d at 477.  These holdings cannot be squared.  Accordingly, this Court follows the Supreme Court's direction and holds that Plaintiff's Fourteenth Amendment claim must be evaluated under an objective standard -- that is, the Court must ask whether, from an objective point of view, [the defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.  <u>Kingsley</u>, 135 S.Ct. at 2473-74.

<u>Thompson v. Beasley</u>, 309 F.R.D. 236, 247 (N.D. Miss. 2015).

Nevertheless, whatever the ultimate impact of <u>Kingsley</u> may be on this Circuit's traditional analysis, one thing is clear:  the foregoing <u>Hudson</u> factors still play a role in a court's analysis of a Fourteenth Amendment excessive force claim.  This is apparent from the fact that the <u>Kingsley</u> court referenced similar factors to be considered in resolving the objective reasonableness of an action on which a Fourteenth Amendment claim is based:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the

> security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, *e.g.*, Graham, *supra*, at 396, 109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

Kingsley, 135 S. Ct. at 2473. Therefore, Judge Brown concluded:

> In answering this question [of whether an officer's use of force was excessive in relation to a legitimate, nonpunitive governmental purpose], the Court turns to the Hudson inquiry, which has been used for nearly twenty-five years to determine whether a corrections officer's use of force was "wanton and unnecessary," that is, whether force was excessive. Hudson, 503 U.S. at 7, 112 S.Ct. 995. However, in a departure from the pre-Kingsley jurisprudence, the Court need only ask whether the force was unnecessary -- not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim.

Thompson, 309 F.R.D. at 247.

Other divisions of this Court have found Judge Brown's reasoning persuasive. Andrew v. St. Tammany Parish Prison, Civ. Action No. 15-2105, 2016 WL 447680, at *8-9 (E.D. La. Jan. 15, 2016), adopted, 2016 WL 430455 (E.D. La. Feb. 4, 2016); Brown v. Gusman, Civ. Action No. 15-1491, 2015 WL 6827260, at *4-5 (E.D. La. Nov. 6, 2015). The undersigned does as well and therefore finds that plaintiff's excessive force should be considered with reference to the Hudson factors. For the following reasons, the undersigned further finds that*, at least at this preliminary stage of the proceedings where plaintiff's claim is evaluated based solely on his allegations,* the Hudson factors weigh in his favor for the following reasons.

With respect to the first factor concerning "the extent of the injury suffered," plaintiff alleges that he did in fact suffer an injury which he attributes to Scott's use of force. Even if the injury is nothing more than a pinched nerve as diagnosed, that suffices. Although a Court must consider the injury's extent in assessing an excessive force claim, "there is no categorical

requirement that the physical injury be significant, serious, or more than minor."   <u>Gomez v. Chandler</u>, 163 F.3d 921, 924 (5th Cir. 1999).  Therefore, this factor would weigh in plaintiff's favor, even if only slightly.

The second and third factors concerning "the need for the application of force" and "the relationship between the need and the amount of force used" also appear to weigh in plaintiff's favor.  He alleges that he was lying down on his stomach offering no resistance and that Scott nevertheless dropped a knee into plaintiff's back in order to apply the restraints.  If plaintiff's version of events is accurate, it appears that no use of force was in fact necessary, much less the degree of force allegedly employed.[10]

The fourth factor concerning "the threat reasonably perceived by the responsible officials" likewise appears to weigh in plaintiff's favor.  Plaintiff suggests that there was in fact no threat, in that this was merely a routine shakedown rather than some type of prison disturbance.  If, as he indicates, there was no resistance to the placement in restraints, it is difficult to imagine that *any* threat was perceived.

Lastly, there is no information before the Court that any effort was made "to temper the severity of a forceful response," so, at best, the fifth factor would seem to be a draw.

In light for the foregoing, the undersigned has no basis for concluding that plaintiff's excessive force claim is frivolous or in any way subject to *sua sponte* dismissal.  Accordingly, the

---

[10] That is not to say that the mere fact that a guard places a knee on an inmate's back and jerks his arm while applying restraints is necessarily improper under constitutional standards.  Clearly, not every malevolent touch by a guard gives rise to a federal cause of action.  <u>Hudson</u>, 503 U.S. at 9.  However, an otherwise proper maneuver can obviously cross the constitutional line depending on the degree of force used.  At this stage of the proceeding, the Court cannot simply unilaterally reject plaintiff's characterization of the force here as excessive.

undersigned recommends that this claim be allowed to proceed pending further development once Scott is served.

## B.  District Attorney Amanda Mustin

Lastly, plaintiff claims that District Attorney Amanda Mustin improperly persuaded a private attorney, Barron Whipple, not to take plaintiff's criminal case.  It appears that plaintiff is alleging that Mustin's actions to dissuade Whipple from taking plaintiff's case violated his right to the counsel of his choice.  Although that right is circumscribed in several respects, it is clear that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment."  Wheat v. United States, 486 U.S. 153, 159 (1988).  Therefore, it is recommended that this claim also be allowed to proceed pending further development.  See Murphy v. Gibbons, No. 1:13-cv-1433, 2014 WL 4828126, at *3 (N.D.N.Y. Sept. 29, 2014) (denying Rule 12(c) motion to dismiss claim that police officer improperly interfered with plaintiff's right to be represented by the counsel of his choice).

Again, however, the undersigned is not expressing an opinion as to the ultimate merit of the claim or any affirmative defenses Mustin may be able to assert.  However, the Court's role at this stage is simply to determine whether the claim is cognizable and non-frivolous.  The undersigned finds that the claim meets that low threshold such that service and further development are appropriate.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claim against Officer Scott for excessive force and the claim against Amanda Mustin for interfering with plaintiff's right to counsel be allowed to proceed pending further development.

It is **FURTHER RECOMMENDED** that plaintiff's claim against Lieutenant Schwausch for false arrest be **dismissed with prejudice to its being asserted again until the Heck conditions are met**.

It is **FURTHER RECOMMENDED** that plaintiff's remaining claims be **dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-eighth day of December, 2016.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**