UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACOB LUKE, SR.                                                CIVIL ACTION

VERSUS                                                     NO. 16-13461-JVM

CAPT. BEAGRON, ET AL.

## ORDER AND REASONS

Plaintiff, Jacob Luke, Sr., a state inmate, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Captain S. Bergeron,[1] Sheriff Jerry Larpenter,[2] Lieutenant Nichallis Daigle,[3] Warden Trish, the Narcotics Team,[4] and Officer Scott Robinson.[5] He thereafter amended the complaint on numerous occasions, and he added Cory Daplantis, Lieutenant T. Schwausch, and Assistant District Attorney Amanda Mustin as additional defendants.

The only claims currently remaining in this lawsuit are a claim against Robinson for excessive force and a claim against Mustin for interfering with plaintiff's right to counsel. All other claims were previously dismissed. Luke v. Beagron, Civ. Action No. 16-13461, 2016 WL 8740486 (E.D. La. Dec. 28, 2016), adopted, 2017 WL 1407719 (E.D. La. Apr. 20, 2017).[6] The remaining parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).[7]

---

[1] Bergeron was incorrectly identified in the complaint as "Capt. Beagron."
[2] Larpenter was incorrectly identified in the complaint as "Sheriff Jerry Laphaner."
[3] Daigle was identified in the original complaint as "Lt. Nick."
[4] In the complaint, plaintiff referred to this defendant as the "Noraratics Team."
[5] Robinson was identified in the original complaint as "Officer Scott."
[6] Rec. Docs. 24 and 29.
[7] Rec. Doc. 45.

Robinson and Mustin have now filed a motion for summary judgment on the remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.[8]  Plaintiff has opposed that motion.[9]  For the following reasons, that motion is **GRANTED**.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to

---

[8] Rec. Doc. 46.
[9] Rec. Doc. 54.

defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## Claim Against Officer Scott Robinson

In this lawsuit, plaintiff claims that Officer Robinson used excessive force during a search at the Terrebonne Parish Criminal Justice Complex. Based on plaintiff's complaint, as amended, and his Spears hearing testimony,[10] the Court finds that he is making the following allegations with respect to this claim: On May 3, 2016, at approximately 9:00 p.m., Lieutenant Bergeron and narcotics officers conducted a search at the jail. The officers had guns and were accompanied by dogs. Brandishing a gun, Officer Scott Robinson approached plaintiff, who was lying on his stomach on his mattress on the floor. When plaintiff raised his head, Robinson told him to stay down and stepped on his shoulder. From a standing position, Scott then dropped his knee onto plaintiff's back with such force that it caused something in his shoulders to "crack." Robinson also forced plaintiff's arm to his back and restrained him with handcuffs and leg restraints. Plaintiff did not initially believe he was physically injured by Robinson's actions; however, he later began to experience symptoms such as neck pain and numbness in his arms and hands, and he still experiences those symptoms periodically. He requested medical care, and a doctor diagnosed plaintiff as having a pinched nerve and prescribed Flexeril (a muscle relaxer) and ibuprofen.

Because plaintiff was a pretrial detainee at the time of the incident, his excessive force claim "lies under the Fourteenth Amendment." Benoit v. Bordelon, 596 Fed. App'x 264, 267 n.2

---

[10] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

(5th Cir. 2015). In this Circuit, it had long been the rule that excessive force claims brought pursuant to the Fourteenth Amendment by pretrial detainees were to be considered using the same analysis as employed when considering excessive force claims brought pursuant to the Eighth Amendment by convicted prisoners. Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir. 1993). Under that analysis, courts were to employ the *subjective* standard announced in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992), which looked to "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Valencia, 981 F.2d at 1446 (internal quotation marks omitted); accord Kitchen v. Dallas County, Texas, 759 F.3d 468, 477 (5th Cir. 2014). As part of that analysis, courts were to consider the following factors:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

However, in 2015, the United States Supreme Court clarified the law concerning excessive force claims brought pursuant to the Fourteenth Amendment. The Supreme Court concluded that with respect to such a claim, a pretrial detainee need show only that the use of force was "*objectively* unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2470 (2015). In doing so, the Supreme Court expressly rejected the *subjective* standard of Whitley and Hudson, holding that those cases are relevant to a Fourteenth Amendment excessive force claim "only insofar as they

4

address the practical importance of taking into account the legitimate safety-related concerns of those who run jails." Id. at 2475.

The United States Fifth Circuit Court of Appeals has not yet considered the ultimate impact of Kingsley on this Circuit's precedents. However, shortly after Kingsley was issued, Judge Debra M. Brown of the United States District Court for the Northern District of Mississippi concluded:

> In the approximately three weeks since Kingsley was decided, only one court in this circuit has addressed the Supreme Court's Kingsley opinion's impact on a Fourteenth Amendment excessive force claim in the Fifth Circuit. In Clark v. Anderson, a Texas District Court followed the Fifth Circuit rule that Fourteenth and Eighth Amendment claims are analyzed under the same framework, although it allowed that "this holding is called into question by the Supreme Court's recent decision in Kingsley ...." No. 4:15-cv-360, 2015 WL 3960886, at *3, *3 n. 3 (N.D. Tex. June 29, 2015). While Clark stopped short of recognizing that Kingsley overruled the Kitchen and Valencia line of cases, a reading of Kingsley compels such a conclusion.
> Kingsley held that Fourteenth Amendment claims, unlike Eighth Amendment claims, must be decided under an objective standard. 135 S.Ct. at 2473-74. Kitchen and Valencia held that Fourteenth Amendment claims, like Eighth Amendment claims, must be decided under a subjective standard. Kitchen, 759 F.3d at 477. These holdings cannot be squared. Accordingly, this Court follows the Supreme Court's direction and holds that Plaintiff's Fourteenth Amendment claim must be evaluated under an objective standard -- that is, the Court must ask whether, from an objective point of view, [the defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose. Kingsley, 135 S.Ct. at 2473-74.

Thompson v. Beasley, 309 F.R.D. 236, 247 (N.D. Miss. 2015).

Nevertheless, whatever the ultimate impact of Kingsley may be on this Circuit's traditional analysis, one thing is clear: the foregoing Hudson factors still play a role in a court's analysis of a Fourteenth Amendment excessive force claim. That is apparent from the fact that the Kingsley court referenced similar factors to be considered in resolving the *objective* reasonableness of an action on which a Fourteenth Amendment claim is based:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use

5

of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, *e.g.*, Graham, *supra*, at 396, 109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

Kingsley, 135 S. Ct. at 2473. Therefore, Judge Brown concluded:

In answering this question [of whether an officer's use of force was excessive in relation to a legitimate, nonpunitive governmental purpose], the Court turns to the Hudson inquiry, which has been used for nearly twenty-five years to determine whether a corrections officer's use of force was "wanton and unnecessary," that is, whether force was excessive. Hudson, 503 U.S. at 7, 112 S.Ct. 995. However, in a departure from the pre-Kingsley jurisprudence, the Court need only ask whether the force was unnecessary -- not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim.

Thompson, 309 F.R.D. at 247.

Other divisions of this Court have found Judge Brown's reasoning persuasive. Andrew v. St. Tammany Parish Prison, Civ. Action No. 15-2105, 2016 WL 447680, at *8-9 (E.D. La. Jan. 15, 2016), adopted, 2016 WL 430455 (E.D. La. Feb. 4, 2016); Brown v. Gusman, Civ. Action No. 15-1491, 2015 WL 6827260, at *4-5 (E.D. La. Nov. 6, 2015). The undersigned does as well and therefore finds that plaintiff's excessive force claim should be considered with reference to the following five Hudson factors. Moreover, for the reasons explained below, it is clear that the defendants are entitled to summary judgment on the claim when those factors are properly weighed.

**1. The extent of the injury suffered.** Plaintiff alleges that he suffered an injury which he attributes to Robinson's use of force. Even if that injury is nothing more than a pinched nerve as diagnosed, that suffices. Although a court must consider the injury's extent in assessing an

excessive force claim, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999).

**2. The need for the application of force.** In the instant case, the defendants have provided evidence showing that the inmates were physically restrained and removed from the dorm in connection with a search for weapons believed to be hidden therein. In an affidavit submitted in support of the instant motion, Assistant Warden Stephen Bergeron explained the necessity of those actions:

> In late April or early May, 2016, I was provided information by a confidential informant that inmates in dorm C 600 had obtained and/or made one or more weapons which were intended to be used to kill or maim an inmate in the facility during recreation on the recreation yard. Based on that information, I advised the Sheriff of same and requested that he approve an entry team into the aforementioned dorm to remove the inmates from that dorm so that a search could be conducted to try and locate the aforementioned weapons.
> I contacted Maj. Terry Daigle of the Terrebonne Parish Sheriff's Office Narcotics Division, who, along with members of his division, as well as Capt. Tim Soignet, head of the training division for the Sheriff's Office, and Houma police officer/K-9 officer Corey Duplantis and his K-9 Falko, would make an entry into the subject dorm, handcuffing all of the inmates in same, and removing them from the living quarters while a search was conducted.
> Pursuant to policy and procedure, the entry team would be allowed to carry weapons into the subject dorm due to the nature of the search and the possibility that weapons that could be used to kill or maim officers or other inmates were located in said dorm. The K-9 officer and his K-9 would be utilized to help maintain order and control during the removal of the inmates and their subsequent return to the dorm after same was searched.[11]

The Court notes that the search in fact uncovered two metal rods which had been sharpened into weapons.[12]

Plaintiff has submitted no evidence whatsoever to refute this evidence concerning the reason for the search. Moreover, because the dorm was being searched for weapons, jail officials obviously had a legitimate reason to restrain the inmates and remove them from the dorm during

---
[11] Rec. Doc. 46-3.
[12] Id.

the search. Therefore, those were proper and necessary uses of force – and, as explained below, those were in fact the *only* uses of force actually applied in this case.

**3. The relationship between the need and the amount of force used.** It is on this factor of the analysis that plaintiff's claim most clearly falters. Here, the entire incident was captured on the jail's video surveillance system, and the video, which appears in the record as Exhibit C attached to defendants' motion, shows a completely routine and wholly unremarkable application of restraints. Neither plaintiff nor Robinson appears agitated in the video, the restraints were quickly applied, and plaintiff was removed from his cell without incident.

The video conclusively refutes plaintiff's allegation that Robinson applied excessive force by violently dropping onto plaintiff's back from a standing position. Where, as here, a video clearly contradicts a plaintiff's factual allegations, a court, even at the summary judgment stage, should "view[] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381 (2007). In Scott, a case involving such a video, the United States Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380. Accord Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign

greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.").

The evidence shows that although Robinson placed his knee on plaintiff's back while applying the restraints, Robinson did not "drop" onto plaintiff's back as alleged. Moreover, the defendants have submitted the affidavit of Captain Tim Soignet to show that such knee placement is a standard maneuver employed to deter possible resistance and ensure the safety of all involved. In his affidavit, Soignet states:

> I am employed by the Terrebonne Parish Sheriff's Office as its Training Director and oversee/supervise the Training Academy of the Terrebonne Parish Sheriff's Office, one of 27 regional accredited law enforcement training academies in the State of Louisiana. I am also in charge of all in-service training for the Terrebonne Parish Sheriff's Office law enforcement employees. I also teach "POST" academy courses required by the State of Louisiana for "POST" certification, as well as in-service training course in use of force and defensive tactics.
> I have reviewed the video of the entry into Dorm C-600 on May 3, 2016, and was present and overseeing the entry as well. It was appropriate for members of the entry team to have weapons when going into this particular dorm situation as it was reported that there were dangerous weapons located/hidden in the door [sic] which could maim or kill, or cause great bodily harm to individuals.
> With regard to defendant/agent Robinson, it can be noted on the video that at all times up until he holstered his weapon he had the same "SUL" position or ready position with the weapon held against his chest and the barrel pointed downward. At no time on the video or during my presence in the dorm entry did I ever see defendant/agent Robinson point his weapon at anyone, much less the individual identified as plaintiff Luke on the video. Furthermore, when defendant/agent Robinson approached the inmate, who was lying on his stomach in the video and identified as plaintiff Luke, defendant/agent Robinson holstered his weapon and then knelt down with a knee on plaintiff Luke's shoulder to maintain control of the inmate while handcuffing the inmate. *This procedure of placing one's knee on a subject's shoulder while the subject is lying on his belly is an approved and taught method for maintaining control of a subject who could resist during the cuffing procedure.*
> I saw nothing on the video that indicated defendant/agent Robinson violated any standard of care taught to him at to [sic] the "POST" Academy courses as well as subsequent courses, nor did I see defendant/agent Robinson at any time use excessive force and [sic] his dealings with plaintiff Luke.
> Defensive tactics are taught by me as a certified instructor, and again, the procedure of carrying a weapon in a "SUL" position and *the manner in which*

9

*defendant/agent Robinson maintained control of plaintiff Luke while cuffing him, as well as picking him up after being cuffed, are taught as approved ways to protect an officer, as well as a subject, during the course of his duties.*[13]

Plaintiff has neither presented any evidence to dispute the legitimacy of this tactic nor cited any jurisprudence holding that the tactic, in and of itself, constitutes an excessive use of force.

**4. The threat reasonably perceived by the responsible officials.** As already explained, the officers had reason to believe that the inmates had hidden weapons in the dorm (and, as noted, such weapons were in fact found). That qualifies as a legitimate threat to the safety of the officers and the other inmates present, and it clearly justifies the inmates' restraint and removal from the dorm.

**5. Any efforts made to temper the severity of a forceful response.** The defendants have offered no evidence or argument concerning this Hudson factor. However, in that the force used on this occasion was already minimal, there was no apparent need to temper it. Further, the Court notes that when plaintiff reported that he had in fact suffered a physical injury from the placement of the knee on his back during the application of the restraints, he received medical attention and treatment for his pain.

In summary, the only Hudson factor which even arguably weighs in plaintiff's favor is the first one, in that he has identified an injury which *might* have been caused in this incident. However, the second, third, and fourth factors, weigh heavily in Robinson's favor, and the fifth factor is seemingly favors neither party. Therefore, when these factors are properly considered and weighed, it is clear that plaintiff's excessive force claim fails.

---

[13] Rec. Doc. 46-6 (emphasis added).

### Claim Against Assistant District Attorney Amanda Mustin

Plaintiff alleges that, after he filed this federal lawsuit, Assistant District Attorney Amanda Mustin violated his right to the counsel of his choice by improperly persuading a private attorney, Barron Whipple, not to represent plaintiff in his criminal case.[14] However, in connection with the pending motion, both Mustin and Whipple have submitted sworn affidavits stating that they never even discussed the subject of Whipple's possible representation of plaintiff.

In her affidavit, Mustin acknowledges that she was assigned to prosecute plaintiff on numerous state criminal charges in the Louisiana Thirty-Second Judicial District Court. However, she stated that, to her knowledge, Whipple never represented plaintiff in those proceedings. She further stated that she "at no time ever had any conversation with Mr. Whipple about his possible representation of Jacob Luke on such matters" and she never told Whipple not to represent plaintiff in those matters. Moreover, after she became aware of plaintiff's allegations against her, she withdrew from all of state prosecutions involving him to avoid the appearance of any impropriety.[15]

In his affidavit, Whipple states that, although he twice met with plaintiff concerning possible representation, he never formally represented plaintiff. Whipple further states: "While I do handle criminal matters in which Assistant District Attorney Amanda Mustin is involved, I have never been asked by her not to represent any criminal defendant, and specifically, I was never asked by her not to represent Jacob Luke in any criminal proceedings."[16]

In that plaintiff has offered no competent summary judgment evidence to rebut the foregoing evidence, his claim fails.

---

[14] Plaintiff then subsequently retained another attorney, Robert Pastor, to represent him.
[15] Rec. Doc. 46-9.
[16] Rec. Doc. 46-10.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 46, is **GRANTED** and that plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eighth day of November, 2017.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

_____
**CLERK TO NOTIFY PLAINTIFF BOTH**
**AT HIS ADDRESS OF RECORD AND:**

**Jacob Luke, Sr.**
**203 Champion Street**
**Gray, LA  70359**